IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**DAVID I. MARTIN**,

        Plaintiff,

v.

**DR. S. SHELTON; DR. GARTH GULICK; S. HODGE; R.N. D. GRAF; UNKNOWN JANE/JOHN DOE**,

        Defendants.

Civil Case No. 3:11-cv-00255-KI

OPINION AND ORDER

    Foster A. Glass
    Attorney at Law
    339 SW Century Drive, Suite 201
    Bend, OR 97702

        Attorney for Plaintiff

    John R. Kroger
    Attorney General

Page 1 - OPINION AND ORDER

Michael R. Washington
Senior Assistant Attorney General
Andrew Hallman
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

    Attorneys for Defendants

KING, Judge:

Plaintiff David Martin, a prisoner housed at Snake River Correctional Institute ("SRCI") during all relevant times, complains that defendants Dr. S. Shelton, Dr. Garth Gulick, Health Services Manager S. Hodge, David Graf, R.N., and other Jane/John Does (collectively, "Oregon Department of Corrections" or "ODOC" defendants) failed to provide him with timely medical care in violation of the Eighth Amendment.

The ODOC defendants bring an Unenumerated 12(b) Motion to Dismiss [12] for Martin's failure to exhaust administrative remedies. For the following reasons, I grant the motion.

## ALLEGED FACTS[1]

Martin alleges that he experienced pain and suffering when the ODOC defendants failed to evaluate Martin's health upon his admission to SRCI; he complained to staff about intense headaches. Dr. Gulick evaluated Martin in mid-July or August of 2008, and told Martin that staff "need[ed] to learn the size of this cyst" and arrange for a specialist to evaluate Martin. Compl. 4. Dr. Gulick then prescribed medications for over a year and a half.

---

[1]The facts are based on the allegations in Martin's complaint as well as the documents attached to ODOC's Declaration of Teresa Hicks. All spelling and grammar are reproduced as in the original.

Martin submitted a grievance on June 24, 2010, which was received the next day. He wrote the following reasons for his grievance:

> I have suffered through the last 2 yrs from 5-6-08 until present without proper medical treatment. Superintendant Mark Nooth has not done anything to affect my lack of care. I've been given numerous medication and seen doctors in both Ontario & Boise who say this cyst needs surgery to remove from my brain. It is life threatening.

Decl. of Teresa Hicks, Att. 3, at 1. In response to the question asking Martin to list the actions he took to informally resolve the grievance, he explained, "I've talked to Garth Gulick to no avail. I've waited patiently but still no surgery. I've kyte medical all phases to no avail." Id. Finally, in answer to the question as to the action he wanted taken, he wrote, "I want compensated for pain & suffering the past 2 years[.] Notwithstanding I will file a civil suit for deliberate indifference." Id.

A month and a half later, on August 11, 2010, Nurse Graf responded:

> This is written in response to your grievance dated June 24, 2010. In your grievance you state that you have been seeking surgery for a cyst in your brain. You were seen at OHSU by a Dr. Delashaw on June 4, 2010 to evaluate your condition. He discussed surgery with you at that time and performed the surgery on July 14, 2010. You are requesting financial compensation in your grievance. The DOC rule on Grievances (Inmate)m 291-109, does not allow for financial compensation as resolution of grievance issues.

Id. at 4.

More than a month later, on September 26, 2010, Martin filed a "Grievance Appeal Form" indicating he was appealing:

> Because I was made to suffer 2 years of migraine headaches, nausea, blurred vision, yet my original grievance was not responded to, to satisfy the trouble I went through facing a life or death situation with a cyst in my head. Just because I finally had surgery does not mean it was timely and I didn't suffer from my daily routine.

Id. at 5.

Page 3 - OPINION AND ORDER

> In response to a query about his previous efforts at resolving the grievance, he wrote:
>
> > Wrote kytes, saw doctors, yet it still took over 2 years. Only after a 3rd doctor opinion did I get my treatment. Even with a Dr. Manning in Boise, ID notifying SRCI it was a life or death situation. Dr. Gulick (SRCI) was instrumental through his boss at SRCI of delaying my treatment. His visits were numerous yet full of hot-air.

Id. Martin indicated he wanted "medical to stop delaying treatment to inmates who face a life or death medical problem like myself. I want to be benefitted from my suffering in the 2 years it took to get me my surgery." Id.

The grievance coordinator rejected the appeal as untimely. She noted that appeals must be filed within two weeks; the response to his grievance was sent August 13, 2010, but Martin did not appeal it until September 26. On November 11, 2010, Martin filed what he called a "level one grievance" on a Grievance Appeal Form referencing the earlier complaint about delayed medical treatment. He wrote, in pertinent part, "SRCI official initially denied . . . grievance appeal as a result of OAR 291-109 time-frame window for filing grievance appeal in (14 days). It is importantly documented herein (OAR), does not preclude actual statute of ultimate repose." Id. at 8. In filing the document, he sought to "exhaust[] administrative remedies." Id. That appeal, too, was denied as untimely.

Martin alleges that the cyst was "lodged in [his] brain, in 3rd ventricule, invading 2 . . . cavities that produce spinal fluid." Compl. 4. He alleges Dr. Gulick was a member of the Therapeutic Level of Care Committee, which evaluates and approves expenditures on medical treatment of inmates, and he failed to properly classify Martin as needing emergency screening and care. Martin alleges Dr. Shelton knew about Martin's headaches, dizziness, blurred vision and nausea, and he "neglected to initiate immediate surgical procedure[.]" Id. at 6. Martin alleges

Page 4 - OPINION AND ORDER

Health Services Manager S. Hodge also failed to act. Martin alleges all three received a letter from a specialist, Dr. T. Manning, on December 8, 2009 reporting that Martin's condition posed a risk of sudden death, but all "failed to act in a timely manner to have surgical removal of cyst, until July 15, 2010." Id. at 7. Dr. Manning's description of Martin's condition made Martin fear his cyst "breaking, leaking a poisonous puss into delicate cavities of my brain, blocking the flow of spinal fluid, and ultimately rendering sudden death." Id.

## LEGAL STANDARDS

The Prison Litigation Reform Act ("PLRA") states: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement requires "proper exhaustion," which means compliance with all deadlines and "other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90, 93 (2006).

The PLRA's exhaustion requirement creates an affirmative defense that must be raised and proven by defendants. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because the failure to exhaust nonjudicial remedies is not jurisdictional under the PLRA, the defense is treated as a matter in abatement and is subject to an unenumerated motion to dismiss rather than a motion for summary judgment. The court may look beyond the pleadings and decide disputed issues of fact. If the prisoner has not exhausted nonjudicial remedies, the court should dismiss the claim without prejudice. Id. at 1119-20.

Grievances are processed in accordance with the ODOC Administrative Rules for Inmate Communication and Grievance Review System. Inmates are encouraged to talk to first line staff as

Page 5 - OPINION AND ORDER

their primary way to resolve disputes and, if not satisfied, to use a written inmate communication form. OAR 291-109-0100(3)(a). If this does not resolve the issue, the inmate may file a grievance. OAR 291-109-0140(1)(a).

Inmates may grieve: (1) the misapplication of or lack of any administrative directive or operational procedure; (2) unprofessional behavior or action directed toward an inmate by an employee or volunteer; (3) any oversight or error affecting an inmate; (4) a program failure; and (5) the loss or destruction of property. OAR 291-109-0140(2)(a)-(f). A grievance must be filed within 30 days of the incident. OAR 291-109-0150(2).

An inmate may appeal a grievance response to the functional unit manager by completing a grievance appeal form and filing it with the grievance coordinator within fourteen days of receipt of the response. OAR 291-109-0170(1)(a) and (b). The inmate will receive a return receipt. OAR 291-109-0170(1)(a). If still not satisfied, the inmate may appeal the functional unit manager's decision by completing another grievance appeal form and filing it with the grievance coordinator within fourteen days of receipt of the response. OAR 291-109-0170(2)(c). This final appeal is decided by an assistant director having authority over the issue. OAR 291-109-0170(2)(a)-(c).

## DISCUSSION

The ODOC defendants move to dismiss Martin's complaint, asserting that Martin failed to timely appeal his grievance. According to the government, Martin received the response to his grievance on August 13 and he had until August 27, 2010 to file his appeal. He did not appeal the grievance until September 26. ODOC similarly denied as untimely Martin's second appeal, filed on November 11, 2010.

Martin raises two arguments in response. First, he asserts there were no "available" remedies remaining in the administrative review process. Martin had received the surgery he demanded and monetary damages are not recoverable in the grievance system. Accordingly, he contends, it would have been futile for him to appeal Nurse Graf's response. Indeed, Martin suggests that under Booth v. Churner, 532 U.S. 731 (2001), he need only have submitted his initial grievance and was relieved of the appeal requirement because the ODOC defendants could not offer him any further relief.

Second, he argues the ODOC defendants' grievance response essentially informed him that no remedies remained. He relies on Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (per curiam), which held that an inmate need not exhaust administrative remedies once an administrator informs him that no remedies are available.

With respect to his first argument, Martin misreads Booth. In that case, Booth filed only the initial grievance and failed to appeal to the upper levels. He sought money damages, but nevertheless he was required to "complete a prison administrative process that could provide some sort of relief on the complaint stated" even when the relief is "not the remedial action an inmate demands[.]" 532 U.S. at 734, 736, 741. The reason for this, the Court held, was that Congress meant to eliminate "a strong inducement to skip the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms." Id. at 741.

The ODOC defendants explain that Martin had administrative remedies available to him, such as investigating the factual circumstances of the delay about which Martin complained. Indeed, Martin's dissatisfaction with Nurse Graf's response, which is apparent from his late appeal, is "a strong indication" that "further relief was 'available'" other than surgery and monetary relief. See

Page 7 - OPINION AND ORDER

Brown v. Valoff, 422 F.3d 926, 938 (9th Cir. 2005) (describing opposite situation; inmate's understanding of response is "strong indication that no further relief was 'available' other than the staff complaint investigation and (confidential) result"). In his late appeal, Martin complains that "[j]ust because I finally had surgery does not mean it was timely and I didn't suffer from my daily routine." Hicks Decl., Att. 3, at 5. He complains about Dr. Gulick delaying treatment and asks that medical treatment be provided promptly to other inmates. The ODOC defendants explain:

> the Assistant Director could have determined–as Plaintiff now argues–that the initial grievance response was insufficient. The Assistant Director could have directed ODOC to gather additional facts and interviewed medical personnel to determine why Plaintiff did not receive surgery until 2010. But Plaintiff did not timely pursue this remedy and, therefore, he failed to exhaust his administrative remedies.

Defs.' Reply 5.

I agree with the ODOC defendants. Requiring exhaustion here–including a timely appeal–satisfies the rationale behind the requirement, which is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005). The possible outcomes after engaging in full exhaustion could have included: improved prison administration, avoiding litigation if Martin was satisfied, and a full administrative record to assist the court in resolving the conflict. Id.

Furthermore, I do not read Nurse Graf's response as a statement that no other administrative remedies were available to Martin. Unlike Marella, nothing in Nurse Graf's response indicated that he was precluded from appealing or that "the appeals process was unavailable to him." 568 F.3d at 1027 (response included statement that it "may not be appealed unless you allege that the above reason is inaccurate"). Additionally, Martin's own late appeal, filed on a "Grievance Appeal Form,"

indicates his belief that further remedies were available through the administrative process. See Brown, 422 F.3d at 938.

Martin's complaint must be dismissed without prejudice for failure to exhaust his administrative remedies.

## CONCLUSION

For the foregoing reasons, the ODOC defendants' Unenumerated 12(b) Motion to Dismiss [12] is granted. This case is dismissed without prejudice.

IT IS SO ORDERED.

DATED this   23rd   day of August, 2011.

     /s/ Garr M. King
Garr M. King
United States District Judge